401 A.2d 830

**William LIND and Richard Lind, minors, by their parent and natural guardian Mary Jo Lind, and Mary Jo Lind, in her own right**

v.

**Matthew THOMAS.**

Appeal of William LIND and Richard Lind, minors by their parent and natural guardian Mary Jo Lind (Gears).

Superior Court of Pennsylvania.

Argued Oct. 25, 1978.

Decided April 12, 1979.

Scott L. Melton and John Alan Conte, Conway, for appellants.

Samuel C. Holland, Panner, Holland & Autenreith, Beaver, for appellee.

Before VAN der VOORT, SPAETH and MONTGOMERY, JJ.

SPAETH, Judge:

This appeal arises from a two car collision. It is filed by passengers who were riding in one of the cars.

The collision occurred at the intersection of Kennedy Boulevard and Grand Avenue in Aliquippa. Kennedy Boulevard is a four-lane highway that runs in a generally east-west direction. Grand Avenue is a two-lane highway that runs in a generally north-south direction. Appellee, Matthew Thomas, was struck as he was negotiating a left turn from Kennedy Boulevard onto Grand Avenue, by a car driven by Mary Jo Lind. Appellants are Mrs. Lind's children, and were passengers in her car. After the accident, Thomas sued Mrs. Lind, Mrs. Lind sued Thomas, and appellants (by their mother) also sued Thomas.[1] The actions were consolidated and were tried by a jury, which returned verdicts in favor of Thomas in both Mrs. Lind's suit against him, and appellant's suit against him, and in favor of Mrs. Lind in Thomas's suit against her, in other words, verdicts that denied any recovery for anyone involved in the accident. A post-verdict motion was filed in which appellant, and Mrs. Lind requested new trials. The lower court, sitting *en banc*, denied the motion. Mrs. Lind has not appealed from this denial, but her children have, claiming that the

1. Mrs. Lind was not joined as an additional defendant by Thomas in the action brought by the Lind children against him.

jury's verdict against them was against the weight of the evidence.[2]

Our cases hold that "[w]here a verdict is so greatly against the weight of the evidence as to be a shock to the judicial conscience, a court has not only the right but the duty to disagree with the jury and to overturn its verdict no matter how many trials need be had in the interest of justice . . ." *Denman v. Rhodes,* 206 Pa.Super. 457, 460, 214 A.2d 274, 275 (1965). *See also Micozzi v. Klysh,* 207 Pa.Super. 77, 215 A.2d 263 (1965). "[I]n passing upon the question whether a verdict is against the weight of the evidence, the court is not required to consider the evidence in the light most favorable to the verdict winner . . . . It is of course true "that the assaying of the credibility of witnesses and the resolving of conflicts in their testimony are for the jury. But it is equally true that the trial judge may not hide behind the jury's verdict; he has a duty to grant a new trial when he is convinced that the judicial process has resulted in the working of an injustice upon any of the parties . . . ." *Denman v. Rhodes,* supra, 206 Pa.Super. at 459, 214 A.2d at 275 (1965) (citations omitted). *See also Pritts v. Wigle,* 414 Pa. 309, 311, 200 A.2d 386, 387 (1964).

It is undisputed that appellants, as children riding in their mother's car, were free of contributory negligence. Thus, in order for the denial of any recovery for appellants to be lawful, the jury had to find that Thomas was not negligent.

The testimony established that the accident occurred at 3:44 p. m. on June 22, 1972. It had rained earlier in the day and was drizzling at the time of the accident. However, no one has asserted that the weather was a substantial factor in causing the accident. Thomas testified that he was driving in the eastbound passing lane on Kennedy Boulevard, and that when he reached its intersection with Grand Avenue, he stopped two car lengths before the traffic light controlling his lane of traffic, with his left turn signal flashing. He then described how he made his left turn, as follows: He

---

2. Appellants have also assigned error in the charge to the jury, but we find it unnecessary to consider that claim.

had a green light to proceed, but nevertheless stopped because he knew that the traffic lights controlling the westbound traffic on Kennedy Boulevard were also green at the time. N.T. 9–10. He looked to the westbound lanes and saw that cars were lined up in the westbound passing land, waiting to turn south into Grand Avenue. He looked to the end of this line and observed that no cars were pulling over into the westbound curb lane to proceed straight through the intersection. He then looked to the westbound curb lane, but could see no further than three or four car lengths into the lane because his view was obstructed by the cars in the westbound passing lane. Seeing no cars in the curb lane, he proceeded to make his left turn without again looking for cars. He was already across the westbound curb lane when he first observed Mrs. Lind's car, two or three car lengths away, proceeding in the curb lane straight through the intersection. A moment later, the front portion of the right side of his car was struck by the right side of Mrs. Lind's car. At the time of the accident, he was traveling approximately five miles per hour, and Mrs. Lind was traveling approximately thirty-five to forty miles per hour, which was within the legal speed limit.

 Thus, Thomas's own testimony shows that when he was hit, he was attempting to execute a left turn across a through lane of traffic before he had assured himself that the way was clear. The fact that he had a green light to make the turn did not give him authority to proceed into the intersection without regard to other traffic. *Fowler v. Smith*, 217 Pa.Super. 244, 247–48, 269 A.2d 340, 341–342 (1970); *Cericola v. Redmon*, 182 Pa.Super. 19, 23, 124 A.2d 417, 419 (1956); *Jordan v. Kennedy*, 180 Pa.Super. 593, 597, 119 A.2d 679, 681 (1956). Even where a motorist has the right-of-way through an intersection, he "must take such precautions in regard to the control and speed of his car and keeping an alert lookout for cars approaching the intersection as a reasonably prudent man solicitous of his own safety would take. . . ." *Enfield v. Stout*, 400 Pa. 6, 12, 161 A.2d 22, 25 (1960). *See also Lewis v. Quinn*, 376 Pa. 109, 101

A.2d 382 (1954); *Dayen v. Penn Bus Co.,* 363 Pa. 176, 69 A.2d 151 (1949); *Kline v. Kachmar,* 360 Pa. 396, 399–400, 61 A.2d 825, 827–828 (1948). "This principle is in no way relaxed because the intersection may be an unusual one or may involve a complex traffic problem. Such a situation would demand a higher degree of vigilance on the part of those crossing or about to cross such an intersection." *Rea v. Pittsburgh Railways Co.,* 344 Pa. 421, 425, 25 A.2d 730, 732 (1942).

■ In the present case, Thomas was familiar with the intersection of Kennedy Boulevard and Grand Avenue. He knew when he was making his turn that he was crossing a lane of traffic that had a green through signal, and thus knew that he did not have the right-of-way across the intersection. Under these circumstances, it was imperative that he enter the intersection carefully, *see Boehm v. Heston,* 325 Pa. 89, 189 A.2d 298 (1937), and because his view of the oncoming traffic was partially obstructed at the point where he stopped and looked, that he continue to look for traffic as he crossed. *Helfrich v. Brown,* 213 Pa.Super. 463, 249 A.2d 778 (1968). Thomas did not continue to look, and consequently was negligent as a matter of law. *Helfrich v. Brown, supra; see also Leasure v. Heller,* 436 Pa. 108, 258 A.2d 855 (1969).

This is not a case like *Rankin v. Boyle,* 328 Pa. 284, 195 A.2d 336 (1937), where a driver was not negligent as a matter of law for failing to continue to look for traffic after she had committed herself to crossing the through highway. There the driver had exercised due care before starting across by looking right and left, and since she was able to see three hundred feet in each direction, a distance that was sufficient to disclose any vehicle that might, traveling at a lawful rate of speed, interfere with her crossing, no purpose of safety would have been served had she continued to look right and left. Here, when Thomas stopped and looked he could not see beyond three or four car lengths into the curb

lane, a distance that a car traveling at a lawful rate of speed might have traversed, and in fact did traverse, by the time he moved across the intersection from his initial position on Kennedy Boulevard.

In denying appellants' motion for a new trial, the lower court conjectured that the jury might have found that although Thomas was negligent, his negligence was not a substantial factor in causing the accident. Given the facts of this case, in particular, Thomas's own testimony, it seems to us that the likelihood of such a finding is exceedingly slight. Moreover, if we were to accept this as the reason for the jury's denial of any recovery for appellants, the conclusion would follow that the verdicts were inconsistent; for if the jury found that Thomas's negligence was not a substantial factor in causing the accident, it should have allowed him to recover from Mrs. Lind, whose negligence would then have been the only cause of the accident. *See Jeloszewski v. Sloan*, 375 Pa. 360, 100 A.2d 480 (1953) (even though plaintiff was negligent, because his negligence did not contribute to the accident, he was entitled to recover damages caused by defendant's negligence).

It is not possible to escape this inconsistency by conjecturing that the jury might have found that Mrs. Lind was not negligent, for the evidence of her negligence was at least as clear as the evidence of Thomas's. Mrs. Lind testified that on the day of the accident she was traveling westward on Kennedy Boulevard at approximately thirty-five to forty miles per hour with a clear view of its intersection with Grand Avenue. Although she claimed that she looked for traffic as she approached the intersection, she admitted that she did not see Thomas's car until it was directly in front of her. If the jury accepted Mrs. Lind's account, they would have had to find her contributorily negligent as a matter of law, unless they believed Thomas entered the intersection at a grossly excessive speed. Mrs. Lind was required to keep an alert lookout for cars approaching the intersection. Al-

though she claimed to have looked for traffic before entering the intersection, she failed to see Thomas's car, which should have been obvious to her, until she was upon it. The law does not accept a driver's statement that she looked, if she failed to see what under the facts she must have seen had she in fact looked. *Clee v. Brinks, Inc.*, 135 Pa.Super. 345, 5 A.2d 387 (1938). *See also Mansfield v. Philadelphia*, 352 Pa. 199, 203, 42 A.2d 549 (1945); *Hoover v. Sackett*, 221 Pa.Super. 447, 451, 292 A.2d 461, 463 (1972). Also, had the jury accepted Mrs. Lind's testimony, Thomas would have been moving across the intersection at a time when the light controlling his lane of traffic would have been red, not green as he claimed.

The Supreme Court has recognized that with rare exception, "[o]ne cutting across the bow of another who holds his course cannot collide with him unless one or both are somehow careless: if either stops in time, no accident can happen." *Cobb v. Chubeck*, 399 Pa. 201, 203, 160 A.2d 207, 209 (1960) (BOK, J.). *See also Matthews v. Derencin*, 360 Pa. 349, 62 A.2d 6 (1948); *but see Platts v. Driscoll*, 245 Pa.Super. 235, 369 A.2d 381 (1976) (on facts of the case conclusion was not inevitable that right angle collision at intersection was caused by the negligence of one or both of the drivers). A fair reading of the evidence leads us to the conclusion that the jury found both Thomas and Mrs. Lind negligent, and ignored the court's charge that Mrs. Lind's negligence could not be imputed to appellants as her children. When a reading of the record discloses no evidence upon which a jury could have properly denied recovery to an innocent passenger, a new trial must be ordered. *Salvio v. Musgrave*, 419 Pa. 346, 214 A.2d 226 (1965); *Fair v. Snowball Express, Inc.*, 226 Pa.Super. 295, 310 A.2d 386 (1973); *Weinstein v. Philadelphia Transportation Co.*, 222 Pa.Super. 448, 295 A.2d 111 (1972).

The order of the lower court is reversed, and the case is remanded for a new trial.